UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIDIA VAIL LUCAS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KIRSTJEN NIELSON, et al.,<br><br>Defendants. | Case No. 18-cv-07763-HSG<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 17 |

## I. BACKGROUND

Petitioners Lidia Vail Lucas and her two minor children, E.L and D.L., are indigenous natives of Guatemala. Dkt. No. 1 ¶¶ 1, 9; Dkt. No. 1-12. Petitioners fled Guatemala in 2015 and have resided continuously in Northern California since then. Dkt. No. 1 ¶¶ 3, 9. On November 23, 2015, the Department of Homeland Security ("DHS") served each Petitioner with a Notice to Appear ("NTA") for removal proceedings. Dkt. Nos. 1-4, 1-5, 1-6. The NTAs did not include a date or time of the Petitioners' proceedings. *Id.* (stating date "To Be Calendared" and time "To Be Determined"). The Petitioners defensively applied for asylum. Dkt. No. 1 ¶ 14.

After receiving the NTAs, Lead Petitioner notified DHS that her address had changed to an address in San Pablo, California. Dkt. No. 18-1 ¶ 4. On December 31, 2015, the San Francisco Immigration Court issued a notice of removal hearing to take place on January 28, 2016 at 9:00 a.m. Dkt. No. 18-1 ¶ 5, Ex. 1. On January 28, Lead Petitioner appeared in San Francisco Immigration Court, where the hearing was continued at Lead Petitioner's request. *Id.* ¶ 6. Lead Petitioner was served in person with a notice of hearing to take place on the continued date of April 18, 2016 at 1:00 p.m. *Id.*, Ex. 2. Lead Petitioner appeared at the April 18 hearing. *Id.* ¶ 7. The Immigration Court scheduled a hearing on Petitioners' asylum claim for October 27, 2016 at 8:30 a.m. and served Lead Petitioner with a notice of that hearing. *Id.*, Ex. 3.

Lead Petitioner appeared for the October 27, 2016 hearing, during which an Immigration Judge denied the asylum claim and ordered Petitioners removed to Guatemala. Dkt. No. 18-1 ¶ 8; Dkt. No. 1 ¶ 15. The Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's decision on June 13, 2017. *Id.*

The Ninth Circuit Court of Appeals dismissed Petitioners' appeal on December 21, 2017. *See* Dkt. No. 1-9. On November 16, 2018, Lead Petitioner presented herself at the local Immigration and Customs Enforcement ("ICE") office to submit a change of address form. Dkt. No. 1 ¶ 17. ICE subsequently placed an ankle bracelet on her. *Id.* On December 14, 2018, ICE ordered Petitioners to leave the country by December 28, 2018. *Id.* In order to avoid detention, Petitioners bought plane tickets to show their intent to leave the country. Dkt. No. 1-1. Petitioners turned in this evidence to ICE on December 21, 2018. Dkt. No. 1 ¶ 17. On December 18, 2018, Petitioners filed a Motion to Reopen before the BIA, along with a motion for a stay of removal, based on the Immigration Judge's lack of jurisdiction to order the Petitioners removed due to deficient NTAs. *Id.* ¶ 16. Petitioners currently have a pending motion to reopen before the BIA seeking to reopen and rescind Petitioners' removal order. *Id.* Petitioners, citing *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), contend that because the NTAs did not include the date and time of their hearing, the NTAs were invalid and deprived the Immigration Judge of jurisdiction to enter a removal order. *See* 8 U.S.C. § 1229(a)(1)(G)(i); 8 C.F.R. § 1003.14 ("Jurisdiction vests, and proceedings before an IJ commence, when a charging document is filed with the Immigration Court by the Service.").

On December 21, 2018, Petitioners attempted to request a stay of removal in anticipation of hernia surgery that Lead Petitioner was scheduled to undergo on December 24, 2018. *Id.* ¶ 17. Lead Petitioner has now had the surgery as scheduled and is undergoing recovery. *Id.* ¶ 18. Her doctor recommended that she not travel by plane until January 7, 2019. *Id.*

Petitioners filed the underlying petition for a writ of habeas corpus on December 28, 2018. Dkt. No. 1. Petitioners allege that removal from the United States before the BIA adjudicates their petition to reopen would violate 8 U.S.C. section 1229(a), the holding of *Pereira*, and Petitioners' right to due process, because jurisdiction did not vest in the Immigration Court since the NTAs did

United States District Court
Northern District of California

1 not include the time of the proceedings. *Id.* ¶¶ 20–28.

2 Petitioners concurrently filed a motion for a temporary restraining order to prevent their removal until their petition could be heard. Dkt. No. 3. The Court granted Petitioners' motion for a TRO and ordered Respondents to show cause why a preliminary injunction should not issue enjoining Respondents from removing Petitioners during the pendency of the underlying habeas proceeding. Dkt. No. 7. After reviewing the parties' briefing, the Court held a hearing on the motion for a preliminary injunction on February 14, 2019. Dkt. No. 25.

## II. LEGAL STANDARD

A federal district court may grant a writ of habeas corpus if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Preliminary injunctive relief, however, is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking preliminary injunctive relief must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Alternatively, an injunction may issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (internal quotation marks omitted). Under either standard, Plaintiff bears the burden of making a clear showing that it is entitled to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

## III. DISCUSSION[1]

### A. Jurisdiction

Respondents contend that the Court lacks jurisdiction over this matter. *See* Dkt. No. 18 at

---

[1] At the February 14, 2019 hearing, the parties agreed that the merits of Petitioners' underlying habeas petition had been fully briefed and argued through the parties' submissions to the Court to date. The Court therefore considers the merits of the petition, whose likelihood of success informs the result of Petitioners' motion for a preliminary injunction. *See Winter*, 555 U.S. at 20–22.

3

4–9. Respondents point to the jurisdiction-limiting portions of 8 U.S.C. section 1252:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C.A. § 1252(g); *see* Dkt. No. 18 at 4–5. Petitioner contends that the Court retains jurisdiction over this matter because a denial of their petition on jurisdictional grounds would effectively deprive Petitioners of any forum to pursue their currently-pending BIA appeal. *See* Dkt. No. 20 at 4–5.

The Court need not resolve the parties' dispute over jurisdiction in order to adjudicate the underlying petition. The Court may apply "hypothetical jurisdiction" in a case where jurisdiction is disputed. *In re Grand Jury Subpoena Issued to Bailin*, 51 F.3d 203, 206 (9th Cir. 1995). Under the doctrine of "hypothetical jurisdiction," the Court "assume[s], without deciding, the existence of subject matter jurisdiction" in order to reach the merits of the underlying issue. *Id.* The doctrine has several required elements: (1) the jurisdictional question must be difficult; (2) the underlying merits must be insubstantial; (3) the merits must be resolved against the party asserting jurisdiction; and (4) undertaking a resolution on the merits as opposed to dismissing for lack of jurisdiction must not affect the outcome. *Id.*

The jurisdictional question presented by the parties is complicated. Conversely, the merits of Petitioners' underlying petition and motion are "insubstantial," and must therefore "be resolved against the party asserting jurisdiction." *See id.* Because a denial of Petitioners' motion for a preliminary injunction and petition for a writ of habeas corpus on the merits is the same result for Petitioners as a dismissal for lack of jurisdiction, assuming hypothetical jurisdiction has no effect on the outcome. Therefore, because the Court finds that Petitioners' underlying habeas petition fails on the merits, as discussed below, the Court assumes hypothetical jurisdiction and does not address Respondents' jurisdictional arguments.

4

**B. Petitioners' Habeas Petition**

    **i.** *Karingithi*

In *Pereira*, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a) [of the Immigration and Naturalization Act ("INA")],' and so does not trigger the stop-time rule." 138 S. Ct. at 2113–14. The question at issue in Pereira was whether an NTA lacking this information triggered the "stop-time" rule under 8 U.S.C. § 1229b(d)(1). It is undisputed that the NTAs initially served on Petitioners failed to "designate the specific time . . . [of their] removal proceedings." *See* Dkt. Nos. 1-4, 1-5, 1-6.

The Ninth Circuit recently addressed the question of whether jurisdiction vests in an Immigration Court upon issuance of an NTA lacking a time and date. *See Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). The petitioner in Karingithi made the same argument as Petitioners here, claiming that "if a notice to appear does not state the time for her initial removal hearing, it is not only defective under § 1229(a), but also does not vest jurisdiction with the IJ." *Id.* at 1160. The Ninth Circuit ruled that:

> [T]he regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction. And for their part, the regulations make no reference to § 1229(a)'s definition of a "notice to appear." If the regulations did not clearly enumerate requirements for the contents of a notice to appear for jurisdictional purposes, we might presume they *sub silentio* incorporated § 1229(a)'s definition. But the plain, exhaustive list of requirements in the jurisdictional regulations renders that presumption inapplicable here. Not only does that list not include the time of the hearing, reading such a requirement into the regulations would render meaningless their command that such information need only be included "where practicable." The regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard.

*Id.* (internal citations omitted).

Applying the Ninth Circuit's reasoning, the Court finds that here, the NTAs served on Petitioners that lacked date and time information nevertheless vested jurisdiction with the immigration judge.

//

####    ii.     'Place' under 8 C.F.R. § 1003.15

At the February 14 hearing, Petitioners conceded that, post-*Karingithi*, Petitioners' only remaining merits argument is that the Immigration Court lacked jurisdiction over Petitioners because "the 'place' element was not meaningfully met on the Petitioners' NTA." *See* Dkt. No. 20 at 17. Petitioners refer to 8 C.F.R. section 1003.15, which states: "The Order to Show Cause and Notice to Appear must also include . . . The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." 8 C.F.R. § 1003.15(b). Petitioners contend that, because the NTAs issued in November 2015 list an address in Texas but NTAs were ultimately filed in San Francisco, the requirements of section 1004.15(b) were not met. Dkt. No. 20 at 18; *see also* Dkt. Nos. 1-4, 1-5, 1-6 (NTAs listing San Antonio, Texas address of immigration court).

The Court is not persuaded by Petitioners' argument. After receiving the NTAs, Lead Petitioner notified the Department of Homeland Security that her address had changed to an address in San Pablo, California. Dkt. No. 18-1 ¶ 4. For that reason, the NTAs were filed with the San Francisco Immigration Court. *Id.* Petitioners cite no authority for the novel proposition that section 1003.15(b)(6) requires that an NTA be filed at the address listed, even if the party subject to the NTA changes her address between the issuing and filing of the NTAs. The NTAs complied with section 1003.15(b)(6) by including the location of the immigration court in which the NTAs were to be filed based on the information available at the time. The eventual change in venue was made to accommodate Petitioners in response to Lead Petitioner's change in address.

//
//
//
//
//
//

## IV. CONCLUSION

Because Petitioners' original argument is precluded by the Ninth Circuit's holding in *Karingithi* and Petitioners' remaining argument is unsupported by section 1003.15 on its face, the Court **DENIES** the petition for a writ of habeas corpus and **DENIES** Petitioners' request for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: 2/22/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge